UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00045-TBR

ALEX ARGOTTE                                                                                          Plaintiff

v.

NORTHWESTERN MUTUAL LIFE INSURANCE                                          Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on competing motions for summary judgment. Defendant Northwestern Mutual Life Insurance ("Northwestern Mutual") has moved for summary judgment on all claims (Docket #39), Plaintiff Alex Argotte has responded (Docket #45), and Northwestern Mutual has replied and supplemented that reply. (Docket #52, 60). Argotte has moved for partial summary judgment (Docket #43), Northwestern Mutual has responded (Docket #49), and Argotte has replied (Docket #55). Northwestern Mutual's motion (Docket #39) will be GRANTED in part and DENIED in part. Argotte's motion (Docket #43) will be DENIED.

BACKGROUND

This case arises out of six disability policies that Dr. Alex Argotte purchased from Northwestern Mutual. Argotte is a surgeon. He has suffered two maladies – carpal tunnel syndrome and central serous retinopathy – which he claims qualify him for disability benefits. (Docket #43). The parties strongly disagree on how to interpret several medical examinations of Argotte.

In 1994, Argotte purchased his first "own occupation" disability insurance policy from Northwestern Mutual. (Docket #43). Argotte added coverage, ultimately purchasing six disability policies. The policies define "total disability" as: "Until the end of the Initial Period,[1] the Insured is totally disabled when he is unable to perform the principal duties of his regular[2] occupation. After the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his regular occupation and is not gainfully employed in any occupation." (Docket #1-1).

Argotte's first disability claim stemmed from the pain and limited range of motion he was experiencing in his right hand. In June, 2009, Argotte underwent surgery to remove a carpal boss in the joint of his right wrist. The surgery was performed by Dr. Charles Goldfarb. Argotte also received treatment from Dr. Shiraz Patel and underwent physical therapy at Restoration Physical Therapy. (Docket #43). Argotte filed a disability claim for this ailment in November, 2009. (Docket #43). In May, 2011, Northwestern Mutual had Argotte submit to an independent medical evaluation performed by Dr. Martin. (Docket #43-17). In August, 2011, Northwestern Mutual denied Argotte's claim.

Argotte's second disability claim stemmed from central serous retinopathy in his right eye. Central serous retinopathy is a condition in which fluid accumulates under the retina causing distorted vision. Argotte was diagnosed with central serous retinopathy in February, 2010. (Docket #39). Argotte received treatment from Dr. Carl Baker and Dr.

---

[1] Two policies omit "Until the end of the Initial Period" and in its place state "During the first 24 months of disability following the Beginning Date."

[2] One policy omits the word "regular" from both sentences.

2

Steven Charles. (Docket #43). Argotte filed a claim for this condition with Northwestern Mutual. Northwestern Mutual had Dr. Marilyn Kay perform a "paper review" of Argotte's medical records. (Docket #43). Northwestern Mutual determined Argotte became partially disabled in February, 2010 and that his disability resolved in September, 2010. (Docket #49). Argotte was paid disability benefits for this period. Argotte argues both that his condition is chronic and therefore unresolved and that Northwestern Mutual's calculation of benefits was incorrect. (Docket #45).

In addition to these disputes, Northwestern Mutual argues "Argotte's surgical career was derailed, not by any physical condition, but by a grievance that was filed against him with the Kentucky Board of Medical Licensure involving allegations of drug use, domestic violence, and questionable medical practices." (Docket #49). Argotte was suspended from Lourdes Hospital in Paducah, Kentucky, and subsequently resigned his position. (Docket #39-4). Argotte accepted a position with Southern Illinois Medical Services ("SIMS") in Herrin, Illinois. However, several months later SIMS learned of grievance against Argotte and terminated him. (Docket #49-10).

Finally, Northwestern Mutual argues Argotte has repeatedly represented that he is physically able to perform surgery by seeking reinstatement at Lourdes Hospital, by applying for positions at other hospitals, and by applying for malpractice insurance. (Docket #49).

Each party argues the record supports summary judgment in their favor. A review of the extensive evidence submitted by each party shows there are factual issues in dispute on most claims which render summary judgment inappropriate.

STANDARD

Summary judgment is proper if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

DISCUSSION

Argotte has alleged Northwestern Mutual (I) breached the insurance policy; (II) acted in bad faith; (III) violated the Kentucky Consumer Protection Act; and (IV)

violated a fiduciary duty owed to Argotte. Northwestern Mutual has moved for summary judgment on all claims. (Docket #39). Argotte has moved for partial summary judgment on his claim that he is disabled as defined in the insurance policy. (Docket #43).

A federal court exercising diversity jurisdiction applies the law of the state whose substantive law governs the action. *Estate of Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 408 (6th Cir. 2005).

### I.     Breach of contract.

The interpretation of an insurance contract is a question of law for the court. *Brown v. Ind. Ins. Co.*, 184 S.W.3d 528 (Ky. 2005). However, the interpretation of conflicting medical testimony generally presents a question of fact for a jury. *Ginsburg v. Insurance Co. of North America*, 427 F.2d 1318, 1320 (6th Cir. 1970); *but see United Ins. Co. v. Brown*, 432 S.W.2d 428, 430 (Ky. App. 1968) (reversing judgment because the facts, as presented by plaintiffs, only showed partial disability, not total disability). To survive summary judgment, the plaintiff must present evidence of a disability that is more than merely speculative. *Rudder v. Ohio State Life Ins. Co.*, 389 S.W.2d 448, 451 (Ky. App. 1965).

The parties agree that Argotte's insurance policies are "own occupation" policies, as opposed to non-occupational policies. (Docket #43, 49). Accordingly, the question before the Court is not whether Argotte could perform "any occupation for which he may be fitted," but rather whether Argotte could "perform the duties of a specific occupation." *Ginsburg*, 427 F.2d at 1321. Specifically, Argotte must be able to perform the "essential duties of his regular occupation." *Phelps v. UNUM Provident Corp.*, 2006 U.S. Dist. LEXIS 71020 *13 (W.D. Ky. 2006) ("a dentist who cannot drill is not a dentist at all").

In this case, the questions are whether Argotte's wrist injury prevented him from performing the motions required of a surgeon or whether Argotte's central serous retinopathy obstructed the vision required of a surgeon. Since each party has moved for summary judgment on these issues, the Court will decide whether the opposing party has raised a factual dispute.

Northwestern Mutual has provided evidence which clearly supports its claim that Argotte is not disabled. For example, Martin performed an independent medical examination of Argotte's wrist injury and concluded Argotte has "no limitations in the use of his hands that would preclude his return to his occupation as a general surgeon." (Docket #43-17). Kay reviewed the medical records pertaining to Argotte's eye condition and opined he could still perform surgery with the use of a monitor. (Docket #43-34). Argotte strongly challenges both findings, criticizing Martin's expertise as he is a plastic surgeon and Kay's methodology as she performed only a "paper review" of Argotte's file. (Docket #45).

Similarly, Argotte has presented evidence in support of his claim that he is disabled. Baker examined Argotte's eye condition and concluded that the central serous retinopathy "interferes with vision needed to perform surgery." (Docket #43-24). Baker diagnosed Argotte in May, 2010 and sent letters to Northwestern Mutual in November, 2010 and June, 2012 confirming that Argotte's eye condition was "definitely interfering with his ability to perform the duties of his profession." (Docket #43-24; 43-30). Additionally, Argotte had Dr. Anthony J. McEldowney perform an independent medical examination, and McEldowney concluded Argotte's wrist injury and eye condition prevented him from returning to his position as a surgeon. (Docket #43-21).

Northwestern counters that McEldowney acknowledged Argotte could still perform some surgeries while his vision was impaired. (Docket #60). Northwestern also points out that Argotte was actively seeking employment with other hospitals at this time and in the process, representing he was fit to perform surgery. (Docket #49).

There is considerable medical evidence in the record, and the parties vehemently disagree on how to interpret this evidence. For example, Goldfarb examined Argotte's wrist and completed an "Attending Physician Statement." Goldfarb answered "No" in response to the question: "Have you restricted your patient from performing any of his or her occupational duties/activities?" However, Goldfarb answers "Yes" to the next question: "Is your patient functionally limited in his or her ability to perform any of his or her occupational duties/activities?" (Docket #43-14). Northwestern Mutual seizes on the answer to the first question as evidence that Argotte is not disabled. Argotte cites the answer to the second question as evidence he is unable to perform the functions of his job.[3]

"[T]he resolution of factual conflicts in the testimony, and the drawing of inferences from conflicting medical testimony [a]re obviously matters for the jury." *Ginsburg v. Insurance Co. of North America*, 427 F.2d 1318, 1320 (6th Cir. 1970). Each party has raised a factual issue as to whether Argotte was disabled. Until this factual issue is decided, the question of whether Northwestern Mutual breached its contract

---

[3] Similarly, Baker completed an "Attending Physician Statement" in regards to Argotte's eye condition. Baker also answered "No" to the question: "Have you restricted your patient from performing any of his or her occupational duties/activities?" Baker also answered "Yes" to the next question: "Is your patient functionally limited in his or her ability to perform any of his or her occupational duties/activities?" (Docket #43-24).

7

cannot be decided. Accordingly, this issue is inappropriate for resolution on summary judgment.

There are two ancillary issues to this claim. First, in his complaint Argotte also claimed he suffered from a back ailment which rendered him disabled. Argotte has presented no evidence to support this claim, and Northwestern Mutual is entitled to summary judgment on this claim. Second, Northwestern Mutual's argues Argotte did not provide written evidence when making his claim. *See American Centennial Ins. Co. v. Wiser*, 712 S.W.2d 345, 346 (Ky. App. 1986). Argotte did provide written evidence, including a Request for Benefits Form, attending physician's statements, financial records, tax returns, and authorizations to disclose medical records. (Docket #45). Northwestern Mutual drew the conclusion that none of these support Argotte's claim, but that is a factual determination appropriate for a jury to decide.

## II. Bad faith.

Argotte has asserted a claim for bad faith. Argotte states this is a "first-party" case and that he "asserted claims for both common law and statutory bad faith." (Docket #45). "There is no common law cause of action in Kentucky for first party bad faith." *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 119 (Ky. 1988). Therefore, the Court considers only whether a statutory bad faith claim exists.

To establish a bad faith claim, a plaintiff must prove three elements: "(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or

acted with reckless disregard for whether such a basis existed." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).

"Kentucky's standard is high. . . . Bad faith is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose of some moral obliquity. It implies conscious doing of wrong. . . . It partakes of the nature of fraud." *Powell v. Cherokee Ins. Co.*, 919 F. Supp. 2d 873, 878 (W.D. Ky. 2013) (citation omitted). To maintain a bad faith claim, a plaintiff must prove that "the conduct of the insurers was outrageous, because of an evil motive or reckless indifference to his rights." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997); *Wittmer*, 864 S.W.2d at 890.

"[A]n insurer is entitled to challenge a claim through litigation if the claim is fairly debatable on either the law or the facts." (citation and punctuation omitted) *Phelps v. State Farm Mut. Auto. Ins. Co.*, 680 F.3d 725, 732 (6th Cir. 2012). However, "the existence of jury issues on the contract claim does not preclude the bad faith claim." *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 375 (Ky. 2000). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." (citation omitted) *Id*. at 376.

Argotte argues Northwestern Mutual acted unreasonably by delaying resolution of Argotte's claims. Approximately twenty-one months elapsed between the time when Argotte filed his claim for his wrist condition and Northwestern Mutual's denial of that claim. (Docket #45). Argotte also claims Northwestern Mutual acted unreasonably by

9

focusing its investigation into alternative grounds for denying Argotte's claim, such as a preexisting condition or the suspension of Argotte's medical license. Northwestern Mutual's disability benefits consultant acknowledged that Argotte's claim was referred to a special investigative unit seven times, including investigations into the status of Argotte's license, a domestic violence order, and a bankruptcy filing. (Docket #43-20).

While a "mere delay" does not constitute bad faith, courts have found delays in the range of eighteen months to three years "may serve as evidence of bad faith." *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 706-07 (6th Cir. 2012) (collecting cases). Moreover, while a "heightened degree of 'scrutiny might raise an inference that the Defendant sought to be as thorough and fair as possible," it may "just as easily . . . raise an inference that the company was looking for reasons to deny coverage." *Estate of Riddle*, 421 F.3d at 408; *see also Shepherd v. UNUMProvident Corp.*, 381 F. Supp. 2d 608 (E.D. Ky. 2005). "Choosing between two reasonable inferences is the function of the jury." *Estate of Riddle*, 421 F.3d at 408.

Argotte's argument that Northwestern Mutual unreasonably delayed resolution of his claim while seven times referring his case to a special investigative unit to search for reasons to deny his claim raises a factual dispute as to whether Northwestern Mutual acted in bad faith. Accordingly, this issue shall be decided by a jury.

### III. Violation of the Kentucky Consumer Protection Act.

The Kentucky Consumer Protection Act ("KCPA") prohibits unfair, false, misleading, or deceptive practices in commerce in furtherance of Kentucky's "strong public policy in favor of consumer protection." *Commonwealth ex rel. Cowan v. Telcom Directories*, Inc., 806 S.W.2d 638, 642 (Ky. 1991); KRS § 367.170. The "purchase of

an insurance policy is a purchase of a 'service' intended to be covered by the Consumer Protection Act." *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1988).

To demonstrate a violation of the KCPA in the context of an insurance claim, the insured must show more than a mere failure to settle a claim. *State Farm Fire & Casualty Ins. Co. v. Aulick*, 781 S.W.2d 531 *533 (Ky. App. 1989); *see also Garrett v. State Auto Prop. & Cas. Ins. Co.*, 2009 U.S. Dist. LEXIS 118572 (holding that "never offer[ing] to pay interest on claims" also did not support a claim under the KCPA). The offending actions must be "substantial wrongs," not merely "irritations injuring pride." *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991) ("[KCPA] does not apply to simple incompetent performance of contractual duties unless some element of intentional or grossly negligent conduct is also present"). In many respects, the analysis is similar to a claim of bad faith. *See Capitol Cadillac*, 813 S.W.2d at 291 ("There is an analogy between the Consumer Protection Act claim asserted here and a tort claim for bad faith based on an insurer's failure to pay the amount due its policyholder").

In general, courts have viewed "the question of whether an insurer's actions rise to the level of unlawful conduct under the KCPA to be a question of fact." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521 *531-32 (6th Cir. 2006). For similar reasons as stated above, the issue of whether Northwestern Mutual's conduct violated the KCPA is a question of fact for a jury to decide.

**IV.   Fiduciary Duty.**

Finally, Northwestern Mutual argues it does not owe a fiduciary duty to Argotte and therefore summary judgment may be granted on this claim.

11

The "circumstances which may create a fiduciary relationship are so varied" as to resist simple classification. *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 485 (Ky. 1991). However, the Kentucky Supreme Court has held that "as a general rule, we can conclude that such a relationship is one founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Id*.

The parties disagree on how to interpret a line of cases which arguably imposes a fiduciary duty on insurers. In *Feathers*, the Kentucky Court of Appeals "established a new tort action in this Commonwealth by reasoning that the insurance company became a fiduciary by breach of a covenant to act in good faith." *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 845 (Ky. 1986) (*citing Feathers v. State Farm Fire & Casualty Co.*, 667 S.W.2d 693, 698 (Ky. App. 1983)). In *Kemper*, the Kentucky Supreme Court expressly overruled *Feathers* and stated: "The only fiduciary relationship we recognize attaching to insurance policies is the excess-of-the-policy-limits cases where good faith is required on the part of the insurance company." *Id*. However, three years later, the Kentucky Supreme Court overruled *Kemper*. *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176 (Ky. 1989). The *Curry* court held "a bad faith action is based upon the fiduciary duty owed by an insurance company to its insured based upon the insurance contract." *Id*. at 380.

Northwestern Mutual argues that the "'fiduciary' language was another way of recognizing the tort of bad faith – ***not*** creating a separate claim for breach of fiduciary duty." (emphasis in original) (Docket #39). Conversely, Argotte argues that *Curry*

12

"rejected the idea from the majority in Federal Kemper that a fiduciary relationship existed only in excess verdict situations." (Docket #45). Northwestern Mutual's position has been adopted by other jurisdictions.[4] However, the Kentucky Supreme Court appears to have reaffirmed *Feathers*. *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 380 (Ky. 2000) (citing *Kemper* and stating "a bad faith action is based upon the fiduciary duty owed by an insurance company to its insured based upon the insurance contract"). Federal courts have interpreted *Johnson* as holding: "Kentucky law imposes a fiduciary duty upon an insurer for the benefit of an insured based upon the relationship between them arising from the insurance contract." *Kendrick v. Std. Fire Ins. Co.*, 2007 U.S. Dist. LEXIS 28461 *51-55 (E.D. Ky. 2007); *Knight v. Stewart Title Guar. Co.*, 2014 U.S. Dist. LEXIS 142725 (E.D. Ky. 2014).

This Court interprets these cases as neither automatically creating a fiduciary duty in all insurance relationships, nor foreclosing the possibility of a fiduciary relationship. Instead, "the existence of a fiduciary relationship is determined from the circumstances of each case." *Knight*, 2014 U.S. Dist. LEXIS 142725 at *32. "Those circumstances must demonstrate an established trust between the parties based on an exchange of

---

[4] In support of Northwestern Mutual's argument is the fact that other states have held an insurance contract may create a special relationship between insurer and insured, but this does not rise to the level of a fiduciary relationship. *Vu v. Prudential Property & Casualty Ins. Co.*, 33 P.3d 487, 492 (Cal. 2001) ("even as the California cases expanded upon the significance of the special relationship between insurer and insured, they have not viewed those cases as undermining the *Neff* decision [that there is not a fiduciary relationship]"); *see also Bolden v. John Hancock Mut. Life Ins. Co.*, 422 F. Supp. 28, 31 (E.D. Mich. 1976) ("Ordinarily, an insurance company stands in no fiduciary relationship to a legally competent applicant for [an] insurance contract"). Kentucky courts have addressed the issue, though not in this specific context, holding an "ordinary business relationship or an agreement reached through arm's length transactions 'cannot be turned into a fiduciary one absent factors of mutual knowledge of confidentiality or the undue exercise of power or influence.'") (citation omitted).

13

confidences." *Id*. The only facts supporting Argotte's breach of fiduciary duty claim is that Argotte paid insurance premiums for fifteen years. That does not demonstrate a relationship of trust necessary to establish a fiduciary duty. Argotte's claim seems to essentially mirror his bad faith claim. Northwestern Mutual is entitled to summary judgment on Argotte's claim for breach of fiduciary duty.

## CONCLUSION

For the foregoing reasons, Northwestern Mutual's motion (Docket #39) for summary judgment is GRANTED in part and DENIED in part. Northwestern Mutual is entitled to summary judgment on Argotte's claim that he was disabled due to a back injury and Argotte's claim for breach of fiduciary duty. Northwestern Mutual's remaining requests are denied. Argotte's motion for partial summary judgment (Docket #43) is DENIED.

cc: Counsel